IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DAVID GADSDEN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:15cv933-WKW |
| | ) | (WO) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**<u>RECOMMENDATION OF THE MAGISTRATE JUDGE</u>**

Before the court is petitioner David Gadsden's ("Gadsden") *pro se* motion under 28
U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody.  Doc.
No. 1.[1]

## I.   INTRODUCTION

On May 5, 2014, Gadsden pleaded guilty to conspiracy to commit wire fraud, in
violation of 18 U.S.C. § 1349.  Doc. No. 9-3.  Gadsden's offense involved opening or
causing others to open bank accounts with minimum deposits and using bad checks from
those accounts to buy things from various businesses.  Doc. No. 10-1 at 4.  Law
enforcement agents identified nearly 200 members of the conspiracy.  *Id*.  Following a
sentencing hearing on November 6, 2014, the district court sentenced Gadsden to 120
months in prison.  Doc. No. 9-7.

---

[1] References to "Doc. No(s)." are to the document numbers of the pleadings, motions, and other materials
in the court file, as compiled and designated on the docket sheet by the Clerk of Court.  Unless otherwise
noted, pinpoint citations are to the page of the electronically filed document in the court's CM/ECF filing
system, which may not correspond to pagination on the "hard copy" of the document presented for filing.

Gadsden appealed, arguing that (1) the district court's loss-amount calculation was not supported by sufficient evidence and (2) the district court erred in imposing a sophisticated-means enhancement to his sentence. *See* Doc. No. 9-9. On October 5, 2015, the Eleventh Circuit rejected Gadsden's claims for relief and affirmed his conviction and sentence in an unpublished opinion. *United States v. Gadsden*, 628 F. App'x 639 (11th Cir. 2015). Gadsden did not seek certiorari review in the United States Supreme Court.

On December 14, 2015, Gadsden filed this § 2255 motion arguing that his lawyers rendered ineffective assistance of counsel in the following ways:

1. Trial counsel failed to object to the district court's loss-amount calculation on the ground it was not supported by sufficient evidence and admitted that the loss amount was "definitely above $400,000."

2. Trial counsel failed to maintain an objection to the number of victims attributed to Gadsden in determining his sentence, and appellate counsel failed to raise the issue on appeal.

3. Trial counsel failed to request a role reduction to Gadsden's offense level based on his minimal or minor participation in the offense, and appellate counsel failed to raise the issue on appeal.

Doc. No. 1 at 6–7; Doc. No. 2 at 4–19.

The government filed a response arguing that Gadsden's claims are without merit and should be rejected as grounds for relief. Doc. No. 9.

After considering the parties' submissions, the record, and the applicable law, the court finds that Gadsden's § 2255 motion should be denied without an evidentiary hearing. Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts*.

## II. DISCUSSION

### A. General Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments under 28 U.S.C. § 2255 are limited.  A prisoner may have relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).

**B.     Ineffective Assistance of Counsel**

A claim of ineffective assistance of counsel is evaluated against the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984).  First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness."  *Id*. at 689.  Second, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.  *See Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable. *Chandler*, 218 F.3d at 1314 (internal quotation marks omitted).  The court will "avoid second-guessing counsel's performance:  It does not follow that any counsel who takes an approach [the court] would

3

not have chosen is guilty of rendering ineffective assistance." *Id*. (internal quotation marks and brackets omitted).  "Given the strong presumption in favor of competence, the petitioner's burden of persuasion—though the presumption is not insurmountable—is a heavy one." *Id*.

As noted, under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.  The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.  *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id*. at 372.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied.  *Strickland*, 466 U.S. at 687.  Once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been.  *Id*. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

A criminal defendant's right to effective assistance of counsel continues through direct appeal.  *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  Ineffective assistance of

appellate counsel may be shown if the movant can "establish . . . that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker[.]  Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Mayo v. Henderson*, 13 F.3d 528, 533 (2nd Cir. 1994).

### 1.        *Loss-Amount Calculation and U.S.S.G. § 2B1.1(b)(1) Enhancement*

Gadsden argues that his trial counsel rendered ineffective assistance by failing to object to the district court's loss-amount calculation on the ground it was not supported by sufficient evidence, and by admitting at sentencing that the loss amount was "definitely above $400,000." Doc. No. 1 at 6; Doc. No. 2 at 4–11.

Under § 2B1.1(b)(1) of the Sentencing Guidelines, the offense level for a defendant convicted of certain economic offenses—including offenses involving fraud and deceit— is subject to a specific offense characteristic enhancement if the loss from the criminal conduct exceeded $5,000, with the extent of the enhancement determined by the amount of the loss.  U.S.S.G. § 2B1.1(b)(1) (2013).[2]  In determining Gadsden's offense level, the district court imposed a 14-level enhancement under § 2B1.1(b)(1) based on a loss calculation of $1,000,000. *See* U.S.S.G. § 2B1.1(b)(1)(H–I) (2013) (providing for 14-level enhancement where loss is more than $400,000 but less than $1,000,000).  Doc. No. 9-7 at 103.

---

[2] The 2013 Guidelines Manual was used in calculating Gadsden's offense level. *See* Doc. No. 10-1 at 10, ¶ 21.  The 2015 Guidelines Manual (effective November 1, 2015) increased the minimum loss amount for application of the § 2B1.1(b)(1) enhancement to $6,500 and increased the various amounts of loss required to trigger various increases in the offense level enhancements under § 2B1.1(b)(1).

At sentencing, Gadsden's counsel objected to the government's loss-amount figure of around $1.4 million, which would have resulted in a 16-level enhancement under § 2B1.1(b)(1). *See* U.S.S.G. § 2B1.1(b)(1)(I–J) (2013). Doc. No. 9-7 at 52–55. The district court asked Gadsden's counsel what loss amount (and corresponding enhancement) she was suggesting, and counsel responded that the loss amount was "definitely above $400,000," which is at the bottom end for a 14-level enhancement. U.S.S.G. § 2B1.1(b)(1)(H–I) (2013). Doc. No. 9-7 at 53–54. After being given time to confirm her estimate, counsel stated that the loss amount was between $800,000 and $1,000,000, the latter figure being at the top of the range for a 14-level increase. U.S.S.G. § 2B1.1(b)(1)(H) (2013). Doc. No. 9-7 at 54. After hearing testimony on the issue, the district court sustained the objection by Gadsden's counsel to the government's loss-amount figure (of $1.4 million) and made a loss-amount finding of $1,000,000, yielding a 14-level § 2B1.1(b)(1) enhancement. Doc. No. 9-7 at 58–103.

On appeal, Gadsden was represented by new counsel, who asserted a claim that the district court's loss-amount calculation was not supported by sufficient evidence. *See* Doc. No. 9-9. The Eleventh Circuit held that it was precluded from reviewing the district court's loss calculation because Gadsden's trial counsel raised no objection to the district court's calculation and had argued for a loss amount that would necessarily result in the 14-level § 2B1.1(b)(1) enhancement that was imposed. *See Gadsden*, 628 F. App'x at 641.

In his § 2255 motion, Gadsden objects to the methodology used by the district court to determine that the loss amount was $1,000,000, arguing that the court's calculation was

based on speculation where the government failed to present sufficient reliable and specific evidence to establish loss.  Doc. No. 2 at 5–10.  Gadsden contends that his trial counsel should have asserted such an objection at sentencing, and should not have conceded to the district court that the loss amount was above $400,000.  *Id.*

Although the Sentencing Guidelines provide some general principles for calculating loss amount, "the appropriate method for estimating loss in any given case is highly fact-dependent, and accordingly, district judges are entitled to considerable leeway in choosing how to go about this task."  *United States v. Campbell*, 765 F.3d 1291, 1301 (11th Cir. 2014).  The Eleventh Circuit has recognized that the Sentencing Guidelines do not require that the amount of loss be established with precision.  *United States v. Jordan*, 374 F. App'x 3, 7 (11th Cir. 2010) ("'[T]he guidelines contemplate that the court will simply make a reasonable estimate based on the available facts.'" (quoting U.S.S.G. § 2T1.1 cmt. n.1.)).

Here, the district court relied on the testimony of Secret Service Agent Leighton Greenlee, who used a multifactor analysis to trace bade checks to the conspiracy.  Agent Greenlee testified at the sentencing hearing that a bad check was included in the loss amount only if it satisfied specific criteria, such as being (1) from a local bank account opened with a minimum deposit;[3] (2) overnighted to the account holder; (3) written just after the account was opened; (4) mailed to an address linked to the coconspirators, including to Gadsden's residential address; (5) used at a frequently victimized store, such as Lowe's, Home Depot, or other building supply stores; (6) used for high-cost purchases,

---

[3] Agent Greenlee testified that the conspiracy involved accounts opened at seven different banks.  Doc. No. 9-7 at 74 & 93.

such as appliances and roofing shingles; or (7) used to buy the same item, from the same store, on the same day that a check from another suspect account was used to buy from the same store on the same day. Doc. No. 9-7 at 59–73 & 93–97. Agent Greenlee testified that he confirmed the reliability of this analysis by interviewing 35 to 40 or the nearly 200 suspected members of the conspiracy and investigating their methods. *Id*. at 62, 66–73 & 92–94. Agent Greenlee created a spreadsheet listing checks that fit the pattern of this multifactor analysis and excluded any checks that did not. *Id*. at 59–65 & 96. He arrived at a total loss amount of $1,418,264.50. *Id.* at 65. After considering Agent Greenlee's testimony, the district court determined the loss amount to be $1,000,000, reducing the amount calculated by Agent Greenlee by nearly 30 percent—establishing a margin of error for any checks that Agent Greenlee may have mistakenly attributed to the conspiracy. *Id.* at 102–03.

Gadsden pleaded guilty to the conspiracy charged in the indictment, a charge alleging that he and his codefendant brother organized and directed the activities involved in the conspiracy. *See* Doc. No. 9-3 at 11–12; Doc. No. 9-1 at 2–5. The district court could reasonably conclude that Agent Greenlee used a reasonable method to identify the nearly 200 individuals who passed worthless checks to identified businesses, that those individuals participated in the conspiracy organized and directed by Gadsden and his brother, and that the losses reported by the businesses were attributable to Gadsden. Gadsden neither demonstrates that the loss attributed to him by the district court was improperly calculated nor identifies a plausible argument or evidence that his trial counsel should have presented that was reasonably likely to change the district court's loss

determination.  He fails to show that the district court's methodology for determining loss was unreasonable or based on speculation, or that the evidence presented by the government through Agent Greenlee was vague or unreliable.  More particularly, Gadsden identifies no plausible argument supporting a loss determination of $400,000 or less.  Thus, he cannot show that his trial counsel was ineffective for conceding that the loss amount was above $400,000.  Any loss-amount determination between $400,000 and $1,000,000 would have supported the same 14-level § 2B1.1(b)(1) enhancement imposed by the district court.  *See* U.S.S.G. § 2B1.1(b)(1)(H–I) (2013).

Because Gadsden does not show that his trial counsel's performance was deficient or that he was prejudiced by any deficient performance, he is entitled to no relief on this claim of ineffective assistance of counsel.

### 2. *Number of Victims and U.S.S.G. § 2B1.1(b)(2) Enhancement*

Gadsden argues that his trial counsel was ineffective for failing to maintain an objection to the number of victims attributed to him at sentencing and that his appellate counsel was ineffective for failing to assert this issue on appeal.  Doc. No. 1 at 6; Doc. No. 2 at 11–15.

Section 2B1.1(b)(2) of the Sentencing Guidelines provides for a specific offense characteristic enhancement for certain economic fraud offenses based on the number of victims.  U.S.S.G. § 2B1.1(b)(2).  Application note 1 to U.S.S.G. § 2B1.1 defines "victim," in pertinent part, as "(A) any person who sustained any part of the actual loss determined under subsection (b)(1)," and it defines a person as including "individuals, corporations, companies, associations, firms, partnerships, societies, and joint stock companies."

U.S.S.G. § 2B1.1, cmt. n.1.  The presentence investigation report ("PSI") prepared by the Probation Office found there were 120 victims in the case and consequently recommended that a four-level § 2B1.1(b)(2) enhancement be applied to Gadsden's offense level.  *See* U.S.S.G. § 2B1.1(b)(2)(B) (providing for four-level enhancement where offense involved 50 or more victims).  Doc. No. 10-1 at 10 & 26.  The district court accepted the recommendation in the PSI and imposed a four-level enhancement based on the finding that Gadsden's offense involved 50 or more victims.  *See* U.S.S.G. § 2B1.1(b)(2)(B).

Initially, Gadsden's trial counsel objected to the finding in the PSI that there were 50 or more victims of Gadsden's offense for purposes of the § 2B1.1(b)(2) enhancement.  Doc. No. 10-1 at 26.  However, counsel withdrew this objection at the sentencing hearing.  Doc. No. 9-7 at 47.

The PSI contained a spreadsheet listing the 120 known victims of the bad-check scheme and the money amounts for the bad checks passed to each victim.  Doc. No. 10-1 at 6–9.  Of the listed victims, 116 were retail-type businesses, while 4 were check-processing companies used by some businesses and responsible for covering the losses of those businesses that used them.  *Id.* at 5–9.  The money amounts for the bad checks passed to the 116 retail-type businesses on the spreadsheet were separate from the listed money amounts that the check-processing companies paid out to the businesses whose losses were covered by the check-processing companies.  *Id.*  At the sentencing hearing, the government introduced exhibits further breaking down the victim spreadsheet in the PSI.  Doc. No. 9-7.

In his § 2255 motion, Gadsden neither demonstrates that the district court's "50 or more victims" finding was erroneous nor identifies a plausible argument that his trial counsel should have presented that was reasonably likely to change the district court's number-of-victims calculation. As reflected in the PSI and established by the government at sentencing, 120 known victims of the conspiracy sustained a financial loss. Although Gadsden suggests that the check-processing companies covered the losses of businesses victimized by the bad-check scheme (*see* Doc. No. 2 at 14–15), he presents no evidence that the 116 retail-type businesses that sustained losses from the bad checks passed to them in the conspiracy were reimbursed, fully or partially, by these check-processing companies or any other third party. As noted above, the money amounts for the bad checks passed to the 116 retail-type businesses on the spreadsheet in the PSI were separate from the money amounts that the check-processing companies paid out to the businesses whose losses were covered by the check-processing companies. Further, the restitution ordered by the district court—$1,000,000—was based on the actual losses of the 120 victims reflected in the PSI and the government's exhibits. It is obvious from this restitution order that 50 or more businesses/victims had not been reimbursed when Gadsden was sentenced.[4] Gadsden's reimbursement argument is meritless.

By failing to show that, but for his counsel's failure to persist in her objection to the district  court's "50 or more victims" finding he would not have received the four-level §

---

[4] The Eleventh Circuit has recognized that for purposes of § 2B1.1(b)(2), victims may include persons who were not immediately reimbursed for their losses. *United States v. Lee*, 427 F.3d 881, 894–95 (11th Cir. 2005).

2B1.1(b)(2) enhancement, Gadsden has failed to demonstrate ineffective assistance of trial

counsel.  Further, because Gadsden has demonstrated no merit to this claim, his appellate

counsel cannot be found to have been ineffective for failing to pursue the claim.  Counsel

cannot be ineffective for failing to present a meritless claim.  *United States v. Winfield*, 960

F.2d 970, 974 (11th Cir. 1992).  Gadsden is entitled to no relief on this claim.

### 3.      *Minor-Role Reduction under U.S.S.G. § 3B1.2*

Gadsden argues that his trial counsel was ineffective for failing to request a role

reduction to his offense level based on his minimal or minor participation in the offense

and that his appellate counsel was ineffective for failing to raise the issue on appeal.  Doc.

No. 1 at 7; Doc. No. 2 at 16–19.

> Section 3B1.2 of the Sentencing Guidelines instructs:
>
> Based on the defendant's role in the offense, decrease the offense level as
> follows:
>
> (a)  If the defendant was a minimal participant in any criminal activity,
> decrease by 4 levels.
>
> (b)  If the defendant was a minor participant in any criminal activity, decrease
> by 2 levels.
>
> In cases falling between (a) and (b), decrease by 3 levels.

U.S.S.G. § 3B1.2.  According to the application notes, the reduction "is intended to cover

defendants who are plainly among the least culpable of those involved in the conduct of a

group."  U.S.S.G. § 3B1.2 cmt. n.1.

Gadsden's participation in the bad-check scheme was manifestly not minimal or

minor, and he was not among the least culpable of those involved in the scheme.  Indeed,

the district court found that Gadsden and his brother were organizers and leaders of the criminal activity and, accordingly, imposed a four-level enhancement under U.S.S.G. § 3B1.1(a).  Doc. No. 9-7 at 47.  Section 3B1.1(a) provides that a defendant's offense level should be increased by four levels for his role in the offense "[i]f the defendant was an organizer or leader of criminal activity that involved five or more participants or was otherwise extensive."  U.S.S.G. § 3B1.1(a).  "A 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted."  U.S.S.G. § 3B1.1 cmt. n.2.  Several participants in the bad-check scheme identified Gadsden and his brother as the leaders of the scheme, and evidence indicated that Gadsden recruited participants and directed the activities of various participants.  *See* Doc. No. 10-1 at 4–5 & 27; Doc. No. 9-7 at 46–47.  The evidence also showed that the criminal activity involved five or more participants and actually involved nearly 200 participants.

> In imposing the § 3B1.1(a) enhancement, the district court stated:

> I think the evidence is overwhelming that both of these men [Gadsden and his brother] were organizers or leaders of a criminal activity that involved five or more participants and was otherwise extensive.  It was extensive in scope, in time, extensive in the amounts of money involved and the amount of sophistication that was required to plan what would otherwise be purchases but in this case were thefts and then to resell the stolen items.  And this is something—this is a scheme that would not happen unintentionally.  And it would not happen without a lot of energy, a lot of planning and, yes, managing, but more than that, organizing and leading.

Doc. No. 9-7 at 47.

Given Gadsden's leadership role in the conspiracy, there was no basis for his trial counsel to seek a minimal-or-minor-participation reduction under § 3B1.2.  Therefore, trial counsel was not ineffective for failing to request such a reduction.  For much the same

reason, Gadsden's appellate counsel was not ineffective for failing to pursue this claim on appeal.  Gadsden is entitled to no relief on this claim.[5]

### III.   CONCLUSION

For the reasons set out above, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Gadsden be DENIED and this case DISMISSED with prejudice.

It is further

ORDERED that the parties shall file any objections to this Recommendation or before April 12, 2018.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.   Failure to file written objections to the Magistrate Judge's findings and recommendations under the provisions of 28 U.S.C. § 636(b)(1) will bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1.  *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

---

[5] There would be no merit in a claim by Gadsden that his trial counsel was ineffective for failing to object to the § 3B1.1(a) enhancement, as trial counsel did object to application of this enhancement. *See* Doc. No. 10-1 at 27; Doc. No. 9-7 at 46–47.  Further, because Gadsden does not demonstrate that this enhancement was erroneously applied to him, he cannot show that his appellate counsel was ineffective for failing to pursue the issue on appeal.

DONE this 29th day of March, 2018.


    /s/   Wallace Capel, Jr.
WALLACE CAPEL, JR.
CHIEF UNITED STATES MAGISTRATE JUDGE